UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JULIA ROE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:19-cv-02530-SNLJ |
| | ) | |
| ANDREW M. SAUL, | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

The Commissioner of the Social Security Administration denied plaintiff Julia Roe's applications for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq*. Roe now seeks judicial review. The Commissioner opposes the motion. The issues being fully briefed, and for the reasons set forth, this Court will **AFFIRM** the Commissioner's decision.

**I.     Procedural History**

Roe's application was denied at the initial determination level.  She then appeared before an Administrative Law Judge ("ALJ").  The ALJ found Roe is not disabled because her symptoms were not supported by the medical evidence available.  Roe then filed a request for review of the ALJ's decision with the Appeals Council of the Social Security Administration, which was denied.  Thus, the decision of the ALJ stands as the final decision of the Commissioner.  *See* 20 C.F.R. § 404.981.  Roe now seeks review by this Court pursuant to 42 U.S.C. § 405(g).

1

## II. Disability Determination—The Five-Step Framework

A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423(d)(2)(A).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. § 404.1520(a)(1). First, the Commissioner considers the claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether "the claimant has a severe impairment [that] significantly limits [the] claimant's physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *see also* 20 C.F.R. § 404.1520(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(c), 404.1520a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" (RFC) to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(5)(i). An RFC is "defined as what the claimant can still do despite his or her physical or mental limitations." *Gann v. Berryhill*, 864 F.3d 947, 951 (8th Cir. 2017); *see also* 20 C.F.R. § 404.1545(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R.

3

§ 404.1545(a)(3).  If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled.  20 C.F.R. § 404.1520(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner. *See Brock v. Astrue*, 574 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 404.1520(a)(4)(v).  If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled.  20 C.F.R. § 404.1520(a)(4)(v).  If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled.  *Id.*  At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Hensley*, 829 F.3d at 932.

### III.   The ALJ's Decision

At Step One, the ALJ found Roe met the insured status requirements through December 31, 2021, and had not engaged in substantial gainful activity since July 18, 2016. (Tr. 15). At Step Two, the ALJ found Roe suffers from four medically determinable impairments: (1) intercostal neuralgia; (2) degenerative disc disease; (3) cerebral palsy; and (4) obesity. (Tr. 15). At Step Three, the ALJ concluded Roe does not have an impairment or combination of impairments that meets or equals one of the presumptively disabling impairments listed in the regulations. (Tr. 17).

Next, in beginning the analysis of Step Four, the ALJ determined Roe's RFC.[1]

The ALJ found that

> [t]he claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) except she can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. She can occasionally balance, kneel, stoop, crouch, and crawl. Lastly, the claimant can have no exposure to vibration or hazards such as unprotected heights and moving mechanical parts.

(Tr. 18). As part of this determination, the ALJ found Roe's allegations about her physical symptoms' intensity, persistence, and limiting effects were not consistent with the medical records when considered as a whole. (Tr. 18). The ALJ recognized Roe's abdominal pain that caused "difficulties in sitting up," "balancing issues," and "tremors." (Tr. 19). But, Roe's daily activities, the lack of corroborating objective testing, and successful therapy treatment (that Roe voluntarily withdrew from) gave the ALJ reason to believe Roe was not suffering from "disabling symptoms and limitations." (Tr. 18-19). The ALJ noted some skepticism that Roe "did not appear [to have] had any primary care provider visits during 2018," this despite claims of disabling pain in 2016 and 2017. (Tr. 20). In addition, the ALJ highlighted a variety of normal examinations and remarked that Roe was "still working" during a time in which she first began to claim her pain was "10/10 at its worst." (Tr. 21). All in all, the ALJ concluded that the "balance of the medical records" did not support Roe's claims of disabling pain. (Tr. 21).

---

[1] Determining claimant's RFC is "essential to properly completing steps four and five." *Swink v. Saul*, 931 F.3d 765, 769 (8th Cir. 2019). However, the RFC is determined at step four—a point in which the burden of proof rests with claimant. *See Scott v. Berryhill*, 855 F.3d 853, 855 (8th Cir. 2017); *Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005).

Having made an RFC determination, the ALJ continued on through Step Four to determine whether Roe could perform her past relevant work in light of her designated RFC. The ALJ determined Roe could perform past relevant work. (Tr. 22). It was noted that Roe was previously a teller, cashier/checker, and customer service representative—all light work. (Tr. 22). The ALJ agreed with the vocational expert that, given Roe's RFC, she was still able to perform all of these jobs "as actually and generally performed." (Tr. 22, 49). Accordingly, the ALJ concluded Roe was not disabled at Step Four.

## IV.  Standard of Review

The Court must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. Under this test, the court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016). The court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id*. The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016).

## V.     Discussion

Roe makes two challenges to the ALJ's decision. First, she says the ALJ erred in discounting the opinions of her treating physician, Dr. Christopher Blanner. Second, she says the ALJ erred in discounting her subjective complaints.

### A. The ALJ Did Not Err in Discounting the Medical Source Statement Opinions of Roe's Treating Physician.

A treating physician's opinion is given "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(c)(2) (2012). However, when "the treating physician's opinion is internally inconsistent or conflicts with substantial evidence contained within the medical record as a whole, the ALJ may afford it less weight." *Pemberton v. Saul*, 953 F.3d 514 (8th Cir. 2020). Particularly concerning are opinions made in the form of so-called "medical source statements" (MSS)—often checklist-formatted documents with little citation to underpinning evidence that make functional determinations without clear explanatory support. Such "conclusory opinion[s]" are rightly regarded with skepticism and an ALJ is not wrong to discount or even disregard them if otherwise unsupported by the record. *Chesser v. Berryhill*, 858 F.3d 1161, 1165 (8th Cir. 2017) (citing *Julin v. Colvin*, 826 F.3d 1082, 1089 (8th Cir. 2016); *see also Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012); *Johnson v. Astrue*, 628 F.3d 991, 994 (8th Cir. 2011).

Blanner completed an MSS in August, 2018, opining that Roe could only occasionally lift 10 pounds or less (never greater weights), could only use her hands,

7

fingers, and arms 5% of the time during an eight-hour workday, and would be absent for more than four days of work per month. In addition, Roe could only sit or stand for 15 minutes at a time and for not more than 2 hours a day.  (Tr. 945-949). The ALJ gave "little weight" to these opinions because they "simply [were] not supported by the balance of the medical record." (Tr. 21). In determining whether that conclusion was based on substantial evidence, this Court endeavors to give a chronological overview of those records.

Roe says she suffers "disabling pain" in the "chest/abdominal/rib case area." According to the records, she has, indeed, suffered some sort of right-sided abdominal pain since the middle of 2015, described medically as "right, anterior, lower thoracic/right upper abdominal pain." (Tr. 520, 689-690, 713, 726, 764). Early on, it was noted that Roe "had reconstructive surgery of her right hip twice due to cerebral palsy in the past," but her "pain does not seem to be in that area" specifically. (Tr. 689). One doctor explained Roe's pain appears to have come from no "inciting event or trauma." (Tr. 665). Early treatment successes appear fleeting. Roe saw Dr. James Sturm in 2015 and 2016, who used rib injections to provide "minimal relief for 2-3 days," but apparently "stopped seeing him" after he "recommended proceeding with an intrathecal pump"—a medical device, sometimes called a "pain pump," used to deliver medications directly to the spinal fluid. (Tr. 286-333, 665). In July 2016, Blanner noted Roe's employer had "not been working with her very well regarding her pain" and indicated that Roe "collapsed in pain at work" due to "R flank pain." (Tr. 823). Roe quit her job shortly thereafter. By April 2017, records suggest Blanner encouraged Roe to "file for disability" and "focus on

8

managing her pain from a chronic pain perspective." (Tr. 877). That same month, Roe entered into a physical therapy program that lasted twelve visits. (Tr. 621-639). Therapy resulted in clear improvements. In May 2017, Roe reported being able to sit through a two-hour movie at the movie theatre. (Tr. 625). She was also successfully exercising on a stationary bike for 25-30 minutes at a time. (Tr. 625). She even managed to enjoy Six Flags and "didn't have to use Biofreeze or a pain pill." (Tr. 738). Curiously, Roe did "not follow up with any issue or schedule further follow-up treatments." (Tr. 634). Accordingly, she was discharged from treatment in August 2017. (Tr. 634). By December 2017, Roe was still experiencing abdominal pain rated somewhat above average; however, functional improvement remained as it was noted that "[activities of daily living] are difficult, but manageable on her own." (Tr. 665).

    In 2018, the records reveal essentially no treatment for Roe's abdominal pain; rather, Roe presented for various other things like nasal congestion, dry cough, low-grade fever, sinus pain, and ear pain. (Tr. 668-670, 898-936). She was generally noted as being "in no distress" (Tr. 915). Though not laid out in chronological form, it is also noteworthy that objective diagnostic testing throughout the treatment period—including X-rays, MRIs, and CT scans—were predominately normal or mild. (Tr. 347-348, 438-439, 447-450, 522-523, 578, 651, 941, 943, 965-969, 972-979). This, perhaps, explains earlier reports that Roe's pain appeared to have come from no "inciting event or trauma." (Tr. 665).

    With a good grasp on the "balance of medical records" the ALJ considered, this Court finds clear flaws in Roe's arguments. She urges this Court to reverse the ALJ for

9

having discounted Blanner's MSS opinions, but those opinions seem to have manifested from thin air and do not track with (or otherwise explain incongruences in) Roe's treatment history. Roe mentions in her brief how she is essentially bedridden, forced to lay "in bed at least 10 hours a day." And Blanner seems to encourage this view in his MSS, suggesting Roe has had "little to no response" to physical therapy, can only use her upper extremities 5% of the time during an eight-hour workday, and can sit, stand, and walk "less than 2 hours" in a given day. (Tr. 947-949). Yet, the full record makes clear that she had functionally improved in 2017 following therapy, voluntarily discontinued therapy thereafter, made no substantial complaints of abdominal pain in 2018, and then asked Blanner—who, early on, suggested Roe seek disability—to complete an MSS that favored, without supporting evidence, pre-therapy levels of pain and functional impairment. The MSS does not explain, indirectly or otherwise, why Roe has never been given an assistive device or functionally restricted to match the severity of pain she and Blanner describe, why Roe's condition seriously degraded after being able to sit through a two-hour movie and exercise for thirty minutes at a time just months prior, or why she made no serious complaints of abdominal pain throughout 2018. Apparently, as the argument goes, the ALJ was supposed to simply take Blanner at his word because he was Roe's long-time treating physician. That isn't the standard. The ALJ must be guided by the totality of evidence, not just one person's opinions. *Nash v. Commissioner, Soc. Sec. Admin.*, 907 F.3d 1086, 1089 (8th Cir. 2018). And, so, the ALJ was right to discount what is a quintessential example of a "conclusory" MSS that fails to find—or, more helpfully, cite to—corroborative evidence in the record. *See Pemberton*, 953 F.3d at 517; *Chesser*,

10

858 F.3d at 1165; *Anderson*, 696 F.3d at 794; *Johnson*, 628 F.3d at 994; *see also* 20 C.F.R. §§ 404.1527(c)(3)-(4) (2012) (identifying "supportability" and "consistency" as two factors to consider in determining whether to given an opinion more or less weight). The ALJ did not err in giving "little weight" to Blanner's MSS opinions.

### B. The ALJ Did Not Err in Discounting Roe's Subjective Complaints

The ALJ discounted Roe's subjective complaints of disabling pain based on her daily activities, unsupportive objective medical evidence, successful therapy, and a lack of meaningful treatment in 2018. (Tr. 19-20). In other words, the ALJ discounted Roe's subjective complaints for the same reason Blanner's MSS opinions were discounted.

> In evaluating a claimant's subjective complaints of pain, the ALJ must consider
> 
> objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions.

*Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019) (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)). The ALJ "need not explicitly discuss each factor," *Schwandt*, 926 F.3d at 1012, and the Court "will defer to credibility determinations that are supported by good reasons and substantial evidence." *Id*.

The same "good reasons" the ALJ had for discounting Blanner's opinions support the ALJ's decision to discount Roe's subjective complaints. And, as this Court has already explained, substantial evidence supports this conclusion. Roe suggests she is nearly bedridden and experiences chronic, disabling pain, but that does not take into account her improvements through therapy, unremarkable diagnostic tests, a lack of

11

doctor-imposed restrictions throughout treatment, the lack of any meaningful treatment in 2018, or the fact that she, herself, acknowledges she is capable of doing many daily activities. Roe reported that she can do laundry, wash dishes, make dinner, go shopping, drive herself, take care of hygienic needs, and attend school and extracurricular functions for her son—though she'd need periodic breaks. (Tr. 39-45. 217-219). She can also sit through two-hour-long movies and engage in thirty-minute exercise sessions. (Tr. 625). She was even able to enjoy Six Flags for a day without needing pain medication. (Tr. 738). As *Schwandt* suggests, any one of these evaluative categories may be insufficient in isolation—they are generally considered holistically. But, the combination of therapy treatment efficacy (something Roe voluntarily withdrew from), ability to engage in various daily activities, normal-or-near-normal diagnostic testing, and lack of any meaningful treatment throughout an entire year-long period suggests Roe's claims of "disabling pain" are not entirely credible. The Court does not reweigh this evidence for itself, but instead finds simply that the ALJ's decision was adequately based on substantial evidence. *See Bryant v. Colvin*, 861 F.3d 779, 782-783 (8th Cir. 2017) (ALJ did not err in discounting subjective complaints of gout pain where daily activities and lack of follow-up complaints to doctors eroded claimant's credibility); *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) (ALJ did not err in discounting subjective complaints of leg and back pain where diagnostic tools showed minor impairments and the balance of medical evidence did not support claimant's allegations); *Melton v. Apfel*, 181 F.3d 939, 941 (8th Cir. 1999) (inconsistent medical examinations, lack of activity restrictions, and lack of consistent treatment gave ALJ sufficient reason to discount

claimant's subjective complaints of back pain). The ALJ did not err in discounting Roe's subjective complaints.

**VI.   Conclusion**

This Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence. It does not substitute its own judgment for that of the ALJ. *Gann v. Berryhill*, 864 F.3d 947, 950 (8th Cir. 2017). Having found the ALJ's conclusions were supported by substantial evidence and that legal standards were correctly applied, this Court affirms the ALJ's decision.

Accordingly,

**IT IS HEREBY ORDERED** that the Commissioner's decision is **AFFIRMED** and plaintiff Julia Roe's complaint (ECF #1) is **DISMISSED with prejudice**. A separate judgment accompanies this Order.

So ordered this 7th day of July 2020.

                                                               STEPHEN N. LIMBAUGH, JR.
                                                               UNITED STATES DISTRICT JUDGE